USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________
No. 98-1365 HARRY W. WEINSTEIN, Debtor. ____________________ PATRIOT PORTFOLIO, LLC Appellant, v. HARRY W. WEINSTEIN, ET AL., Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ____________________ Before Boudin, Circuit Judge,
Reavley, Senior Circuit Judge, and Lipez, Circuit Judge. _____________________ Jeffrey D. Ganz, with whom Kevin J. Simard and Riemer &
Braunstein were on brief, for appellant. Joseph P. Bernardo for appellees. Anne M. Lobell, Attorney, Appellate Staff, Civil Division,
U.S. Department of Justice, with whom Frank W. Hunger, Assistant
Attorney General, Donald K. Stern, United States Attorney, and
William Kanter, Attorney, were on brief for the United States. John Rao and National Consumer Law Center, Inc. on brief for
National Association of Consumer Bankruptcy Attorneys, amicus
curiae. ____________________ January 7, 1999 ____________________ REAVLEY, Circuit Judge. The question in this bankruptcy
appeal is whether, under 11 U.S.C. 522, a Chapter 7 debtor may
assert a homestead exemption for his residence acquired after a
debt and attachment of a lien, despite the Massachusetts statute
excepting the preexisting lien and debt from homestead protection. The bankruptcy and district courts allowed the homestead protection
because Bankruptcy Code 522 preempted the state exceptions. We
affirm. I. FACTUAL AND PROCEDURAL BACKGROUND The dispute centers on a debt and judicial lien,
currently held by Patriot Portfolio, LLC ("Patriot"), and recorded
against Harry W. Weinstein's residence in Massachusetts. The
judgment lien was recorded on August 4, 1992, at which time
Weinstein had owned the property for more than two decades. On
April 2, 1996, Weinstein acquired an estate of homestead under
Massachusetts law by recording a Declaration of Homestead pursuant
to the Massachusetts Homestead Act, Mass. Gen. Laws ch. 188. On August 26, 1996, Weinstein filed a voluntary
bankruptcy petition under Chapter 7 of the Bankruptcy Code. In his
petition, Weinstein claimed a $55,000 homestead exemption in his
residence under the Massachusetts homestead statute. Patriot filed
an objection, arguing that because both its lien and the underlying
debt from which it derived predated Weinstein's acquisition of the
estate of homestead, according to section 1(2) of the homestead
statute, the exemption does not apply. The bankruptcy court and
district court allowed Weinstein to avoid Patriot's assertion,
concluding that the Massachusetts provisions excepting prior
contracted debts and preexisting liens from homestead protection
were preempted by 522 of the Code. Because the state exceptions
did not apply in bankruptcy, the court avoided Patriot's lien under 522(f) because, absent the lien, Weinstein would have been
entitled to the Massachusetts homestead exemption. The district
court affirmed. II. ANALYSIS
A. Lien Avoidance Under 522(f) Bankruptcy Code 522 allows a debtor to exempt certain
property from the bankruptcy estate that the trustee distributes to creditors. See 11 U.S.C. 522. If the state has not opted out
of the federal exemption scheme, 522(b) allows the debtor to
choose between the federal bankruptcy exemptions listed in 522
(d), other nonbankruptcy federal law, and exemptions under state or
local law. Once the debtor has claimed property as exempt, 522(c)
provides that such exempt property is not liable for any pre-
petition debt except the specific types enumerated in 522(c)(1)-
(3). These types of debt include debts for certain taxes and
customs duties; debt for alimony, maintenance, or support; liens
that cannot be avoided; liens that are not void; tax liens; and
certain nondischargeable debts owed to federal depository
institutions. See 11 U.S.C. 522(c). Assuming for the moment
that Patriot's lien can be avoided, none of the above types of debt
apply to the facts of this case. Weinstein chose the state exemption scheme and claimed a
$55,000 homestead exemption under the Massachusetts Homestead Act,
which provides: An estate of homestead to the extent of one hundred thousand dollars in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home . . . who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases: (1) sale for taxes; (2) for a debt contracted prior to the acquisition of said estate of homestead; . . . .
Mass. Gen. Laws ch. 188, 1 (emphasis added). Additionally,
section 5 of the homestead statute withholds homestead protection
from any preexisting lien. Specifically, the statute states: "No
estate of homestead shall affect a mortgage, lien or other
encumbrance previously existing." Id. 5. Bankruptcy Code 522(f) governs lien avoidance. This
provision allows avoidance of a judicial lien to the extent the
lien impairs an exemption to which the debtor would otherwise be
entitled. Section 522(f) provides: Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is (A) a judicial lien . . . .
11 U.S.C. 522(f)(1) (emphasis added). The United States Supreme
Court interpreted the requirements of 522(f) in two 1991
decisions. In Farrey v. Sanderfoot, the Court held that in order
to "avoid the fixing of a lien on an interest of the debtor in
property" under 522(f), the debtor must have "possessed the
interest to which the lien fixed, before it fixed." 500 U.S. 291,
299, 111 S. Ct. 1825, 1830, 114 L.Ed.2d 337 (1991). In Owen v.
Owen, the Court held that to determine whether a lien "impairs an
exemption to which the debtor would have been entitled" under 522
(f), the proper question to ask is not whether the lien impairs an
exemption to which the debtor is in fact entitled, but rather
whether the lien impairs a state or federal exemption to which the
debtor would have been entitled but for the lien itself. See 500
U.S. 305, 310-13, 111 S. Ct. 1833, 1836-38, 114 L.Ed.2d 350 (1991). In short, two requirements must be met before a debtor can avoid a
lien under 522(f): (1) the debtor must have had an ownership
interest in the property before the lien attached; and (2)
avoidance of the lien must entitle the debtor to a state or federal
exemption. We begin our analysis with the Supreme Court's decision
in Owen and assume for the moment that the prior contracted debt
exception is preempted by the Bankruptcy Code. In Owen, the
Supreme Court considered whether a Chapter 7 debtor can avoid a
judicial lien encumbering exempt property, even though the State
has defined the exempt property to specifically exclude property
encumbered by preexisting liens, i.e., liens that attached before
the property acquired its homestead status. See 500 U.S. at 306-
07, 111 S. Ct. at 1834-35. At the same time the debtor purchased
a condominium in Sarasota County, Florida, a judgment lien
previously recorded by the debtor's former wife immediately
attached to the property. See id. The debtor did not qualify for
the homestead exemption until a year after he purchased the
property, when Florida broadened its homestead exemption. See id.at 307, 111 S. Ct. at 1835. When the debtor later filed for
bankruptcy under Chapter 7, he claimed a homestead exemption in the
condominium. Following discharge, the bankruptcy court denied the
debtor's motion to avoid the lien under 522(f). The district
court and the Eleventh Circuit both affirmed. See id. at 307-08,
111 S. Ct. at 1835. The Supreme Court, however, rejected the interpretation
of 522(f) urged by the creditor and employed by the courts below
- that the state exemption statute's built-in limitations are fully
operative in bankruptcy. Under the creditor's view, the lien
obviously did not impair the debtor's homestead exemption since
under Florida law, the exemption does not apply to preexisting
liens. See id. at 309, 111 S. Ct. at 1836. Noting that bankruptcy
courts had uniformly rejected this approach with respect to federal
exemptions, the Supreme Court saw no justification for treating
federal and state exemptions differently. See id. at 310-13, 111
S. Ct. at 1836-38. Tracking the language of the Code, the Supreme
Court held that when applying 522(f) to either federal or state
exemptions, the question is "not whether the lien impairs an
exemption to which the debtor is in fact entitled, but whether it
impairs an exemption to which [the debtor] would have been entitledbut for the lien itself." Id. at 310-11, 111 S. Ct. at 1836-37. In other words, if "avoiding the lien would entitle the debtor to
an exemption . . . then avoid and recover the lien." Id. at 312-
13, 111 S. Ct. at 1837. In reaching this conclusion, the OwenCourt expressly rejected the notion that because the Code's "opt-
out" policy allows States to define their own exemptions, those
exemptions must be applied with all their built-in limitations. See id. at 313, 111 S. Ct. at 1838 ("We have no basis for
pronouncing the opt-out policy absolute, but must apply it along
with whatever other competing or limiting policies the statute
contains."). The Court ultimately concluded that Florida's
exception for preexisting liens did not preclude avoidance of the
lien in bankruptcy under 522(f): On the basis of the analysis we have set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal and state exemptions by 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.
Id. at 313-14, 111 S. Ct. at 1838. The Supreme Court then remanded
the case to the Eleventh Circuit to determine if the requirements
of Farrey had been met, i.e., whether the debtor acquired the
property interest before the lien attached. Owen governs the disposition of this issue. As in Owen,
Patriot's lien predated Weinstein's acquisition of the estate of
homestead. Both Florida and Massachusetts law except preexisting
liens from homestead protection. Following the clear command of
Owen, the Massachusetts exception for preexisting liens is
inoperative in bankruptcy and must yield to the Code's lien
avoidance provision. See id. Thus, we hold that Bankruptcy Code 522(f) preempts Mass. Gen. Laws ch. 188, 5. We are unimpressed by Patriot's attempt to distinguish
this case from Owen. Patriot asserts that the Massachusetts
homestead exemption is unique because, contrary to the homestead
exemption provided under Florida law, other state statutes, and
federal law, in Massachusetts the underlying real estate is not
exempt. Rather, the Massachusetts statute creates a separate asset
- the "estate of homestead" - that is distinct from the debtor's
interest in the underlying real property. Relying on this premise,
Patriot argues that Massachusetts law must be applied in its
entirety to determine the nature and value of the estate of
homestead. We view this characteristic as a distinction without a
difference, which does not warrant different treatment under the
Code. Moreover, we note that the 19th century cases Patriot relies
on for support neither address nor control bankruptcy issues. See,e.g., Pratt v. Pratt, 37 N.E. 435 (Mass. 1894); Weller v. Weller,
131 Mass. 446, 447 (1881).
B. Preemption of the Prior Contracted Debt Exception We now turn to the question of whether the Bankruptcy
Code preempts the Massachusetts prior contracted debt exception,
Mass. Gen. Laws ch. 188, 1(2). Unless this exception is also
preempted, Weinstein could not claim the homestead exemption since
he contracted for the underlying debt before he acquired the
homestead estate. We begin by comparing 522(c) with Mass. Gen. Laws ch.
188, 1(2), to determine if there is a conflict. Section 522(c)
provides that during or after bankruptcy, exempt property is not
liable for any prepetition debts except those debts specified in
subparagraphs (1)-(3). See 11 U.S.C. 522(c)(1)-(3). This list
includes: (1) debts for certain taxes and customs duties; (2) debts
for alimony, maintenance, or support; (3) liens that cannot be
avoided; (4) liens that are not void; (5) tax liens; and (6)
certain nondischargeable debts owed to federal depository
institutions. See id. The exceptions in the Massachusetts
homestead statute serve a similar function by withholding homestead
protection under state law from certain types of debt. Section 1
provides in relevant part: Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases: (1) sale for taxes; (2) for a debt contracted prior to the acquisition of said estate of homestead; (3) for a debt contracted for the purchase of said home; (4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children; (5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand; (6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.
Mass. Gen. Laws ch. 188, 1(1)-(6). The heart of Patriot's
argument is that there is no conflict between section 522(c) and
the Massachusetts homestead statute. Patriot asserts that the
"property exempted" for purposes of section 522(c) must be defined
by Massachusetts law, including all of its built-in limitations. Under this view, the exceptions to the homestead statute operate to
define the value of the estate, which is the "property exempted,"
and therefore there is no conflict between 522(c) and section
1(2). Weinstein, on the other hand, urges us to adopt the view
espoused by the First Circuit Bankruptcy Appellate Panel and a
majority of the Massachusetts bankruptcy judges - that 522(c)
conflicts with and preempts the prior contracted debt exception. See In re Fracasso, 222 B.R. 400 (B.A.P. 1st Cir. 1998); In re
Leicht, 222 B.R. 670 (B.A.P. 1st Cir. 1998); In re Mills, 211 B.R.
1 (Bankr. D. Mass. 1997) (Kenner, J.); In re Whalen-Griffin, 206
B.R. 277 (Bankr. D. Mass. 1997) (Feeney, J.); In re Boucher, 203
B.R. 10 (Bankr. D. Mass. 1996) (Queenan, Jr., J.). According to
this view, exempt property in a bankruptcy case remains liable only
for the specific types of debt listed in 522(c)(1)-(3). Because
the Massachusetts prior contracted debt exception is not one of the
types of debt specified in 522(c), it is invalid in bankruptcy. We are persuaded by Weinstein's argument. Congress has plenary power to enact uniform federal
bankruptcy laws. See U.S. Const. art. 1, 8, cl. 4; International
Shoe Co. v. Pinkus, 278 U.S. 261, 265, 49 S. Ct. 108, 110, 73 L.
Ed. 318 (1929). Consequently, "[s]tates may not pass or enforce
laws to interfere with or complement the Bankruptcy Act or to
provide additional or auxiliary regulations." International Shoe
Co., 278 U.S. at 265, 49 S. Ct. at 110 (noting that the intent of
Congress in establishing uniform bankruptcy laws necessarily
excludes inconsistent state regulation). We recognize that
Congress afforded significant deference to state law by allowing
bankruptcy debtors to choose state exemptions and by further
allowing states to opt out of the federal exemption scheme
entirely. See In re Boucher, 203 B.R. at 12 (citing 11 U.S.C. 522(b)). Yet, such deference does not warrant the conclusion
that the "property exempted" in section 522(c) must be defined by
first applying all the built-in exceptions to the state exemption
statute. As the Supreme Court recognized in discussing the
interplay between 522(f) and state exemption exceptions in Owen,
the state's ability to define its exemptions is not absolute and
must yield to conflicting policies in the Bankruptcy Code. SeeOwen, 500 U.S. at 313, 111 S. Ct. at 1838. Although Massachusetts
has not opted out of the federal exemption scheme, as was the case
in Owen, the analysis applies equally where the debtor chooses the
state exemption scheme. Like the bankruptcy court and the district court below,
we are persuaded by Judge Feeney's analysis of the conflict in In
re Whalen-Griffin. As Judge Feeney recognized, the Massachusetts
exceptions overlap and conflict with 522(c). See 206 B.R. at
290. While both statutes limit the debts for which exempt property
remains liable, the Massachusetts exceptions protect debts left
unprotected by 522(c). We agree with Judge Feeney's conclusion
that: Because the exceptions to the Massachusetts homestead have the same effect on the homestead as the exceptions set forth in 522 (c), . . . the Massachusetts homestead statute is preempted to the extent that it permits exempt property to be liable for debts other than those expressly enumerated in 522(c) (1)-(3), particularly because the language employed by Congress in 522(c) is devoid of ambiguity.
206 B.R. at 291-92. On this basis, we conclude that section 1(2)
of the homestead statute is preempted by 522(c) of the Code. SeeRini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997)
("[A] state statute is void to the extent it is in conflict with a
federal statute." (citing Maryland v. Louisiana, 451 U.S. 725, 747,
101 S. Ct. 2114, 2129, 68 L.Ed.2d 576 (1981))), cert. denied, 118
S. Ct. 51, 139 L.Ed.2d 16 (1997). Our conclusion is consistent
with numerous decisions in other jurisdictions holding that a
state's exceptions to its homestead exemption are preempted by the
Bankruptcy Code. See, e.g., In re Maddox, 15 F.3d 1347, 1351 (5th
Cir. 1994) (holding that lien avoidance under 522(f) is not
limited by state exceptions); In re Opperman, 943 F.2d 441, 443
(4th Cir. 1991) (holding that limitation in North Carolina
homestead statute was invalid to the extent it conflicted with
operation of 522(f)); In re Scott, 199 B.R. 586, 591-93 (Bankr.
E.D. Va. 1996) (holding that intentional tort exclusion in Virginia
exemption statute conflicts with and is preempted by 522(c)); In
re Conyers, 129 B.R. 470, 472 (Bankr. E.D. Ky. 1991) (concluding
that "the determination of the types of debts that remain
collectible after bankruptcy from exempt property is controlled by
federal rather than state law"). In so holding, we again reject Patriot's insistence that
the courts below and the cited Massachusetts bankruptcy courts have
all misconstrued the unique character of the Massachusetts
homestead exemption. We do not view the Massachusetts statute's
creation of an "estate of homestead" to be so markedly different
from the homestead exemptions available under federal or other
state's laws that it need not yield to the overriding policies of 522(c). See In re Leicht, 222 B.R. at 680 ("[W]e decline [the
debtor's] invitation to recognize the Massachusetts homestead as so
different in character from other exemptions that 522(c)'s fresh
start mechanism cannot operate to enlarge its protections.").
C. Application of 522(f) The judgment here meets the requirements of Farrey and
Owen because Patriot's lien "fixed" upon Weinstein's interest in
the property, and the lien impaired an exemption to which Weinstein
was entitled. Section 522(f) allows a debtor to "avoid the fixing of a
lien on an interest of the debtor in property." In Farrey, the
Supreme Court construed this phrase to mean that the debtor must
have "possessed the interest to which the lien fixed, before it
fixed." 500 U.S. at 299, 111 S. Ct. at 1830. Patriot insists that
because its lien never "fixed" upon any exempt property, it cannot
be avoided under 522(f). Patriot essentially argues that the
relevant "interest of the debtor in property" that must exist
before the lien attaches is the estate of homestead. We disagree. Not only does the language of 522(f) not refer to an "exempt
interest," the Supreme Court's analysis in Owen also substantially
undercuts this position. In Owen, the Supreme Court remanded the
case to the Eleventh Circuit to consider whether the lien ever
fixed upon the debtor's interest in the property itself since the
debtor may have acquired the property at the same time the lien
attached. See 500 U.S. at 314, 111 S. Ct. at 1838. On remand, the
Eleventh Circuit held that there was no "fixing of a lien on an
interest of the debtor" because under the Florida after-acquired
property statute, the lien attached at the same moment the debtor
acquired the property. See In re Owen, 961 F.2d 170, 172 (11th
Cir. 1992). Therefore, the debtor could not avoid the lien under 522(f). See id. at 173. Both the Supreme Court's and the
Eleventh Circuit's analysis turned on whether the debtor had
acquired an ownership interest in the property before the lien
attached, and not whether the debtor had acquired the homestead
exemption before the lien attached. If, as Patriot argues, 522
(f) requires the debtor to have an interest in the exemption before
the lien attached, the Court in Owen need not have remanded the
case since the facts clearly showed that the debtor did not have an
exempt interest in the property before the lien attached. We
cannot reconcile Patriot's interpretation with that of Owen. We
also note that Patriot's argument has been expressly rejected by
several courts in other jurisdictions. See, e.g., In re Maddox, 15
F.3d 1347, 1351-52 (5th Cir. 1994) ("Nothing in the statute
specifies the need for attachment to an exemptible interest of the
debtor in the property; at a minimum, the Debtor's ownership
interest in the property at issue here suffices."); In re Hastings,
185 B.R. 811, 815 (B.A.P. 9th Cir. 1995); In re Johnson, 184 B.R.
141, 146 (Bankr. D. Wyo. 1995). There is no dispute that Weinstein owned the residence
several years before Patriot's lien attached to the property. Consequently, Weinstein "possessed the interest to which the lien
fixed, before it fixed." Farrey, 500 U.S. at 299, 111 S. Ct. at
1830. Applying the clear command of Owen, but for Patriot's lien,
Weinstein would be entitled to the $55,000 homestead exemption
claimed in his petition. See Owen, 500 U.S. at 310-13, 111 S. Ct.
at 1836-38. The state's prior contracted debt exception no longer
enters into the mix. On these facts, we conclude that the
bankruptcy court properly avoided Patriot's lien under 522(f).D. Fifth Amendment Takings Claim Patriot claims avoidance of its lien under 522(f)
violates the Fifth Amendment Takings Clause. Even if Patriot did
not seasonably raise the argument below, we nevertheless believe
it is appropriate to address the merits of Patriot's constitutional
challenge. In this circuit, the general rule is that issues raised
for the first time on appeal are waived. See In re Rauh, 119 F.3d
46, 51 (1st Cir. 1997). However, appellate courts have discretion
to address issues not seasonably raised below, depending upon the
individual facts of the case. See Singleton v. Wulff, 428 U.S.
106, 121, 96 S. Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Exercise of
our discretion is appropriate where, as here: the new issue is
purely a question of law; addressing the merits would promote
judicial economy as the same issue will likely be raised in other
cases; and the claim raises an issue of constitutional magnitude,
which if meritorious, could substantially affect the rights of
creditors and debtors in this and future bankruptcy proceedings. See, e.g., In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332,
1343-44 (1st Cir. 1992); United States v. La Guardia, 902 F.2d
1010, 1013 (1st Cir. 1990); cf. Petitioning Creditors of Melon
Produce, Inc. v. Braunstein, 112 F.3d 1232, 1236-37 (1st Cir.
1997). Although Congress has broad constitutional authority to
enact bankruptcy laws, see U.S. Const. art. I, 8, "[t]he
bankruptcy power is subject to the Fifth Amendment's prohibition
against taking private property without compensation." United
States v. Security Indus. Bank, 459 U.S. 70, 75, 103 S. Ct. 407,
410, 74 L.Ed.2d 235 (1982). The debtor does not dispute that
Patriot's judicial lien constitutes "property" within the meaning
of the Fifth Amendment Takings Clause. See Brief for the Appellee,
at 22; see also Security Indus. Bank, 459 U.S. at 75-78, 103 S. Ct.
at 410-12; Armstrong v. United States, 364 U.S. 40, 44-46, 80
S. Ct. 1563, 1566-67, 4 L.Ed.2d 1554 (1960). Nor is there any
dispute that 522(f) applies prospectively in this case, as
Patriot's lien was recorded against the residence in 1992, more
than a decade after section 522(f) became effective on October 1,
1979. See Bankruptcy Reform Act, Pub. L. No. 95-598, 402, 92
Stat. 2589 (1978). The Supreme Court has not specifically addressed the
constitutionality of prospective application of 522(f). In
United States v. Security Industrial Bank, the Court discussed the
constitutionality of retroactive application of 522(f) to liens
created before its enactment, but ultimately declined to reach the
issue. See 459 U.S. at 74-82, 103 S. Ct. at 410-14. Concluding
that "there is substantial doubt whether the retroactive
destruction of the appellees' liens in this case comports with the
Fifth Amendment," id. at 78, 103 S. Ct. at 412, the Court construed
the statute to have only prospective and not retrospective effect. Id. at 78-82, 103 S. Ct. at 412-14. Some courts have concluded
that Security Industrial Bank strongly suggests if not implicitly
holds that prospective application of 522(f) would not
impermissibly tread on the Takings Clause. See, e.g., In re
Thompson, 867 F.2d 416, 422 (7th Cir. 1989); In re Leicht, 222 B.R.
670, 682-83 (B.A.P. 1st Cir. 1998). While we agree that the
Supreme Court's analysis in Security Industrial Bank supports our
holding, we acknowledge that it is not dispositive. Penn Central Transportation v. City of New York, 438 U.S.
104, 124, 98 S. Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), sets forth the analytical framework for resolving Patriot's takings challenge. See Security Indus. Bank, 459 U.S. at 75, 103 S. Ct. at 411
(stating that lien avoidance under 522(f) "fits but awkwardly
into the analytic framework employed in Penn Central Transp. Co."). Courts addressing regulatory taking claims consider three factors:
(1) the economic impact of the regulation on the claimant; (2) the
extent to which the regulation interferes with the claimant's
reasonable investment-backed expectations; and (3) the character of
the governmental action. See Penn Cent. Transp. Co., 438 U.S. at
124, 98 S. Ct. at 2659. Regarding the first factor, Patriot complains that
avoidance of its lien completely destroyed its property interest in
the debtor's residence. As to the second factor, Patriot further
insists that lien avoidance was not within its reasonable
investment-backed expectations, i.e., "that the lien will continue
to exist until such time as the underlying debt is satisfied or the
debtor's interest in the property subject to the lien is
extinguished." In this Circuit, the Bankruptcy Appellate Panel ("BAP")
recently rejected an identical takings challenge in In re Leicht,
222 B.R. 670 (B.A.P. 1st Cir. 1998). Although the BAP's decision
is not binding on this Court, we find it convincing. There, the
BAP rejected the argument that avoidance of the creditor's judicial
lien "completely destroyed the property interest that [the
creditor] had in the Residence." Id. at 684. The BAP held that no
property interest was taken from the creditor because its property
rights in the judicial lien were circumscribed by the federal lien
avoidance provision in effect when those rights were created. Seeid. at 683. Although the lien was a protected interest under the
Fifth Amendment, at its inception, the lien was subject to and
limited by the debtor's power to avoid the lien under 522(f). See id. Because 522(f) was in effect when the creditor's lien
arose, no taking occurred when the lien was later avoided under
that provision. See id. at 684; see also In re Thompson,867 F.2d
at 422 ("[L]ien avoidance is not a taking when it is authorized
before the creditor makes the secured loan in question . . . .");
In re Snellings, 10 B.R. 949, 956 (Bankr. W.D. Va. 1981) ("[T]hose
liens created after the enactment of the Bankruptcy Reform Act of
1978 . . . are implicitly subject to the debtor's power to avoid
liens on exempt property under section 522(f)."). Applying the sound reasoning of In re Leicht, we reject
Patriot's argument that avoidance of its judicial lien completely
destroyed its property interest. Patriot's judicial lien was
perfected in 1992, thirteen years after 522(f) became effective
in 1979. Because Patriot's property rights in the lien are
circumscribed by the debtor's ability under the Code to avoid the
lien, prospective application of 522(f) does not constitute a
"taking" of Patriot's property interest within the meaning of the
Fifth Amendment Takings Clause. As no taking occurred, we need not
discuss the other Penn Central factors.
E. Sua Sponte Reconsideration and Reversal Finally, Patriot complains that the bankruptcy court
abused its discretion by reopening the case on its own motion,
reversing its original decision, and avoiding Patriot's lien
without notice or further hearing. We review the bankruptcy
court's discretionary decision to reopen the case and reconsider
its prior decision for an abuse of discretion. See In re Gonic
Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990). Patriot
acknowledges that the bankruptcy court had broad discretion under
Bankruptcy Code 105(a) and 350(b) to reopen the case on its own
motion to avoid its lien. Nevertheless, Patriot complains that
the bankruptcy court's sua sponte decision to avoid its lien
without notice or further hearing violated its procedural due
process rights since it had no formal opportunity to address the
lien avoidance issue. We disagree. First, Patriot had already
presented its principal arguments to the bankruptcy court prior to
the court's first decision. Second, despite the procedural posture
in which the issue was raised, at a minimum, Patriot could have
raised its constitutional argument at the December 10th hearing, if
not in a motion for reconsideration. Moreover, because we have
fully considered the merits of Patriots constitutional claim, any
resulting prejudice from Patriot's alleged inability to raise this
argument below has been cured. Consequently, because Patriot has
suffered no prejudice, we agree with the district court's
conclusion that the bankruptcy court did not abuse its discretion. III. CONCLUSION For the reasons stated above, we hold that Bankruptcy
Code 522(f) and 522(c) preempt the Massachusetts provisions
excepting preexisting liens and prior contracted debts from
homestead protection. The bankruptcy court properly avoided
Patriot's lien under 522(f). Affirmed.