Damon MASSEY and Marie
Massey, Debtors.

Damon Massey and Marie
Massey, Appellants,

v.

Denise M. Pappalardo, Chapter
13 Trustee, Appellee.

BAP No. MW 11–060.
Bankruptcy No. 11–41059–MSH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 27, 2012.

Walter Oney, Esq., Fitchburg, MA, on brief, for Appellants.

Denise M. Pappalardo, Esq. and Joanne Psilos, Esq., on brief, for Appellee.

David Baker, Esq. and Tara Twomey, Esq., on brief, for Amicus Curiae.

Before LAMOUTTE, KORNREICH, and TESTER, United States Bankruptcy Appellate Panel Judges.

TESTER, Bankruptcy Judge.

The debtors, Damon Massey and Marie Massey ("the Masseys" or "the Debtors"), appeal from the bankruptcy court order ("the Order") sustaining the objection of the chapter 13 trustee, Denise Pappalardo ("the Trustee"), to their claimed exemptions of "100% of FMV" in their residence

and car. For the reasons set forth below, we **AFFIRM** the Order.

***BACKGROUND***

The Masseys are chapter 13 debtors, who filed a joint petition for relief, schedules, a statement of financial affairs, and a plan of reorganization in March 2011. On Schedule A, they indicated that they each owned a one-third interest, with a right of survivorship, in a single family home in Billerica, Massachusetts ("the residence"),[1] which they valued at $92,000.00. They reported on Schedule B that they jointly owned, *inter alia*, a 1995 Saturn ("the car"), which they valued at $1,455.00. On Schedule C, they indicated that they were electing their federal exemptions under § 522(d).[2] At the heart of this appeal is their further disclosure on Schedule C that the amount of their claimed exemptions in both the residence and the car was "100% of FMV," pursuant to § 522(d). The Masseys' Schedule D reflected that the residence was subject to a mortgage in the amount of $127,555.43, and that $35,555.43 of the claim was unsecured. The Masseys did not list any liens on the car on Schedule D.

In May 2011, the Trustee objected both to confirmation of the Debtors' chapter 13 plan and their exemptions ("the Objection"). Relying on *Schwab v. Reilly*, —— U.S. ——, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010), the Trustee challenged the claimed exemption in the residence primarily on the grounds that it exceeded statutory limits. She also argued that the exemptions constituted an improper attempt to capture post-petition appreciation in the residence and the car, and suggested that the

---

**1.** On their Schedule A, the Debtors also indicated that Marie Massey's mother owned the remaining third.

**2.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer

to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37.

Masseys were acting in bad faith. Accordingly, the Trustee argued that because the Masseys' exemptions were improper, their plan might fail the liquidation test of § 1325(a)(4), and, therefore, confirmation should be denied.

In their response to the Objection ("the Response"), the Masseys countered with the argument that resounds throughout this appeal: "The idea that one has no statutory right to claim an in-kind exemption to property whose value is plainly within the statutory exemption limits is anathema to a consumer debtor." They rejected the Trustee's arguments that their challenged exemptions exceeded statutory limits, and that they were acting in bad faith. They further contended that the phrase, "100% of FMV," was merely a "phrase of art" authorized by the Supreme Court in *Schwab* to claim in-kind exemptions. Specifically, they pointed to the following language from *Schwab:*

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV." Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. See

Fed. R. Bankr.P. 1009(a). Either result will facilitate the expeditious and final disposition of assets, and thus enable the debtor (and the debtor's creditors) to achieve a fresh start free of the finality and clouded-title concerns [the debtor] describes.

At the hearing on the Objection, the Trustee argued that neither *Schwab* nor the Code permit in-kind exemptions. She again argued that the Debtors were attempting to shield potential appreciation in the real estate, which was actually property of the estate pursuant to *Barbosa v. Solomon,* 235 F.3d 31 (1st Cir.2000).

The Masseys countered:

> The key point here is that the phrase "100[%] of FMV" doesn't mean what it seems to mean. If the Supreme Court had said, "Use the word 'Rumpelstiltskin' when you want to claim an in-kind exemption,'" that's what we would have done, and it would have meant no more nor less than the phrase that we did pick, which is the one that's mentioned in Justice Thomas's opinion.

When the bankruptcy court asked counsel for the Masseys, "How is anybody supposed to know what 'FMV' means," counsel replied: "Well, the Supreme Court told us ... [in *Schwab* ]."

The bankruptcy court entered an order overruling the Objection based on the misapprehension that it was untimely. In the order granting the Trustee's motion to reconsider, the court wrote:

> Upon reconsideration, I will vacate my July 25th order and enter the following order on the [T]rustee's objection. The [T]rustee's objection to the [D]ebtors' claim of exemption of "100% of FMV" in [the residence and the car] is sustained. "Most of the § 522(d) exemption categories define the property a debtor may claim as exempt as the

debtor's interest—up to a specified dollar amount—in the assets described in the category, *not* as the assets themselves. §§ 522(d)(5)–(6); *see also* §§ 522(d)(1)–(4), (8)...." *Schwab v. Reilly,* —— U.S. ——, 130 S.Ct. 2652, 2661–62, 177 L.Ed.2d 234 (2010) (Internal quotation marks omitted). Accordingly, the debtors' exemptions are deemed limited to the maximum statutory exemption amount available to them as of the date of the filing of their [c]hapter 13 petition (i.e., $40,400[.00] for the [residence] and $3,225[.00] for the [car]). To the extent either item appreciates in value after the [c]hapter 13 filing date, the [D]ebtors would be entitled to exempt such appreciation up to the maximum exemption amount. Any appreciation in excess of the exemption amounts, however, would be property of the estate potentially available for creditors. *Barbosa v. Solomon,* 243 B.R. 562, 568 (D.Mass.2000), *aff'd* [ ] 235 F.3d 31 (1st Cir.2000). Subject to the foregoing, the [T]rustee's objection to plan confirmation is overruled. The [T]rustee may incorporate the relevant terms of this order in her proposed order confirming the plan.

The Masseys appealed that portion of the court's ruling sustaining the Trustee's objection to their "claim of exemption of '100% of FMV' in their home and automobile."

### *JURISDICTION*

■ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits even if the litigants do not raise the issue. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724, 725 (1st Cir. BAP 1998). A panel may hear appeals from "final judgments, orders and decrees [pursuant to 28

U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). The Panel has previously ruled that "[a]n order sustaining an objection to exemption is a reviewable final order." *Fracasso v. Reder (In re Fracasso),* 222 B.R. 400 (1st Cir. BAP 1998) (citation omitted), *aff'd,* 187 F.3d 621 (1st Cir.1999); *see also Howe v. Richardson (In re Howe),* 232 B.R. 534 (1st Cir. BAP 1999), *aff'd,* 193 F.3d 60 (1st Cir.1999). Accordingly, the Panel has jurisdiction to hear this appeal.

### *STANDARD OF REVIEW*

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo.* *See Lessard v. Wilton–Lyndeborough Coop. School Dist.,* 592 F.3d 267, 269 (1st Cir.2010). The Panel reviews orders regarding a debtor's claimed exemptions *de novo,* especially where, as here, there are no disputed issues of fact. *In re Howe,* 232 B.R. at 535; *In re Fracasso,* 222 B.R. at 400.

### *POSITION OF THE PARTIES*

The following excerpt from the Masseys' Amended Brief best summarizes their argument:

> The [Supreme] Court [in *Schwab* ] is *not* saying that a debtor can't keep assets subject to a capped exemption. It is saying instead that the Code does not give the debtor the right to exempt property in kind if the property's value exceeds the cap. The Bankruptcy Judge misinterpreted the distinction as implying the former, and that was error.

On appeal, the Masseys maintain that they have employed the phrase, "100% of FMV," for precisely the purpose author-

ized by the Supreme Court in *Schwab*—that is, to indicate their intent to exempt the residence and the car in-kind, and "not simply the liquidation value of those assets." They also reject the notion that they are attempting to exempt future appreciation in their home and car and assert that "*Barbosa* is a red herring."

In addition to their reliance on *Schwab*, the Masseys invoke the legislative history of bankruptcy exemptions, arguing that the historical purpose of exemption laws has been to protect a debtor from his creditors and provide him with the basic necessities of life. They also argue that pre-*Schwab* case law, such as *Barroso–Herrans v. Lugo–Mender (In re Barroso–Herrans)*, 524 F.3d 341, 344 (1st Cir.2008), supports a debtor's retention of "exempt property regardless of whether the relevant exemption statute includes a monetary cap or not." Lastly, the Masseys point to proposed changes to Official Form C, which would allow a debtor to state the value of the claimed exemption as "the full fair market value of the exempted property."[3]

As in the proceedings below, the Trustee maintains on appeal that the Masseys' claimed exemptions in the residence and the car are problematic because, in failing to claim a specific dollar amount under §§ 522(d)(1) and (2), they are facially defective. In addition, she contends that the exemption in the residence exceeds the statutory limit. She further argues that the Masseys' exemptions must fail because they are ambiguous and hinder the administration of the estate.

## DISCUSSION

This appeal arises out of the parties' diverging interpretations of the effect of *Schwab* on a debtor's ability to claim exemptions in-kind under § 522.

### I. Section 522

█ "When a debtor files a bankruptcy petition, all of his property becomes property of the bankruptcy estate." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (citing 11 U.S.C. § 541). However, the Code "allows a debtor to prevent the distribution of certain property by claiming it as exempt." *Id.* "In Massachusetts, a debtor can choose between the federal exemptions—those listed in § 522(d)—or the exemptions enumerated in state law." *Garran v. SMS Financial V, LLC (In re Garran)*, 338 F.3d 1, 4 (1st Cir.2003) (citation omitted). Since the Masseys elected the federal exemptions, § 522(d) governs this dispute.

Section 522(d) "lists 12 categories of property that a debtor may claim as exempt." *Schwab*, 130 S.Ct. at 2655. "Most of these categories ... define 'property' as the debtor's 'interest'—up to a specified dollar amount—in the assets described in the category, *not* as the assets themselves." *Id.* (emphasis in the original). Section 522(d)(1) permits a debtor to ex-

---

**3.** We recognize that the Administrative Office of the United States Courts has submitted for public comment a preliminary draft of a proposed amended Form C, which would permit debtors to check a box under "value of claimed exemption" indicating "full fair market value of the exempted property." *See* Preliminary Draft of Proposed Amendments to the Federal Rules of Practice and Procedure (August 2011), available at: http://www.uscourts.gov/uscourts/RulesandPolicies/rules/ PublicationAug.20, 2011/Brochure.pdf (last visited Feb. 13, 2012). The proposed amended form, however, has "not been submitted to or considered by the Judicial Conference or the Supreme Court." *See* Memorandum to the Bench, Bar and Public (Aug. 12, 2011), available at: http://www.uscourts.gov/ uscourts/RulesAndPolicies/rules/Publication Aug.20,2011/Memo_to_Bench_Bar_2.pdf (last visited Feb. 13, 2012).

empt its "aggregate interest, not to exceed $21,625[.00] in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence...." 11 U.S.C. § 522(d)(1). Section 522(d)(2) authorizes the exemption of "[t]he debtor's interest, not to exceed $3,450[.00] in value, in one motor vehicle." 11 U.S.C. § 522(d)(2).

A trustee or creditor may object to the debtor's claimed exemptions. Fed. R. Bankr.P. 4003(b)(1) provides, in pertinent part, that "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." In *Taylor, supra,* the Supreme Court held that if an interested party fails to object to a claimed exemption within the time allowed, the subject property will be excluded from the bankruptcy estate even if the exemption's value exceeds the statutory limits. 503 U.S. at 643–44, 112 S.Ct. 1644.

## II. Schwab

*Taylor, supra,* provided the foundation for *Schwab,* which addressed "the consequences of a trustee's failure to object to a claimed exemption within Rule 4003's time period...." *Schwab,* 130 S.Ct. at 2655. However, in *Schwab* the Supreme Court discussed the limited issue of what happens when the trustee's failure to object timely to a debtor's claimed exemptions is the result of his/her reliance on the debtor's facially valid description of his/her claimed exemptions on Schedule C.

Specifically, in *Schwab,* the chapter 7 debtor exempted certain kitchen equipment when her catering business failed. On her Schedule B, she assigned an estimated market value of $10,718.00 to the equipment, and on Schedule C, she claimed "a 'tool[s] of the trade' exemption for the statutory-maximum '$1,850[.00] in value'" pursuant to § 522(d)(6), and another "$8,868[.00]" under the statutory provisions allowing miscellaneous, or 'wildcard,' exemptions up to $10,225[.00] in value." *Schwab,* 130 S.Ct. at 2654. Hence, in *Schwab,* the total value of the debtor's claimed exemptions, $10,718.00, equaled her estimate of the fair market value of the equipment. *Id.* Although the trustee had an appraisal indicating that the value of the equipment was actually higher than the statutory, allowed exemption amount, he did not object within the 30–day period prescribed by Fed. R. Bankr.P. 4003(c) because the claimed exemptions ostensibly fell within the prescribed limits of §§ 522(d)(5) and (d)(6). *Id.* When the trustee sought the bankruptcy court's permission to auction the equipment, the debtor objected, arguing that she had announced her intent to exempt "the equipment's full value" by "equating on Schedule C the total value of her claimed exemptions in the equipment with the equipment's estimated market value ... even if it turned out to be more than the amounts she declared and that the Code allowed." *Id.*

Relying on *Taylor, supra,* the bankruptcy court sided with the debtor, and held that the trustee's failure to object timely to the debtor's claimed exemptions entitled the debtor to exempt the full value of her equipment. *Id.* The district court and the court of appeals agreed, rejecting the trustee's argument that "neither the Code nor Rule 4003(b) requires a trustee to object to a claimed exemption where the amount the debtor declares as the exemption's value is within the limits the Code prescribes." *Id.* However, the Supreme Court reversed, holding that the lower courts had misread its holding in *Taylor,* and concluded: "[W]e take [the debtor]'s exemptions at

face value and find them unobjectionable under the Code, so the objection deadline we enforced in *Taylor* is inapplicable here." *Id.* at 2667.

In *Schwab,* the Supreme Court explained that *Taylor* simply "establishes and applies the straightforward proposition that an interested party must object to a claimed exemption if the amount the debtor lists as the 'value claimed exempt' is not within statutory limits, a test the value ($ *unknown* ) in *Taylor* failed, and the values ($8,868[.00] and $1,850[.00] ) in this case pass." *Id.* at 2666 (emphasis in the original).

The Supreme Court suggested that the impact of its decision in *Schwab* was limited, stating: "[T]he only burdens our conclusion imposes are burdens the Code itself prescribes, specifically, the burdens the Code places on debtors to state their claimed exemptions accurately and to conform such claims to statutory limits." *Id.* at 2667 n. 17. Where the Code provisions cited in support of a debtor's claimed exemptions are not at issue, the trustee's duty to object "turns solely on whether the value of the property claimed as exempt exceeds statutory limits . . ." *Id.* at 2662 n. 7.

Just as *Taylor* stands for the narrow proposition that a trustee must object timely to a facially invalid exemption, *Schwab* similarly stands for the equally limited proposition that the time limits for objecting to an exemption do not apply if the claimed exemption is valid on its face. The Supreme Court instructed that when deciding whether to object to an exemption, trustees should look at "three, and only three, entries" on Schedule C: the description of the property, the Code provisions governing the claimed exemptions, and the amounts listed in the column titled "value of claimed exemption." *Id.* at 2663.

The Court offered the following procedure for a debtor to declare its intent to claim an exemption in-kind, in an apparent effort to ease a trustee's burden when evaluating whether or not to object:

Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV." Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. *See* [Fed. R. Bankr.P.] 1009(a). Either result will facilitate the expeditious and final disposition of assets, and thus enable the debtor (and the debtor's creditors) to achieve a fresh start free of the finality and clouded-title concerns Reilly describes.

*Schwab,* 130 S.Ct. at 2668.

The instant dispute arises out of the perceived tension between *Schwab's* suggested use of the language, "100% of FMV," and the doubt the Supreme Court cast on the merits of in-kind exemptions, expressed in the following footnote:

[The debtor's] argument assumes that a claim to exempt the full value of the equipment would, if unopposed, entitle her to the equipment itself as opposed to a payment equal to the equipment's full value. That assumption is at least ques-

tionable. Section 541 is clear that title to the equipment passed to Reilly's estate at the commencement of her case, and § 522(d)(5) and (6) are equally clear that her reclamation right is limited to exempting an interest in the equipment, not the equipment itself. Accordingly, it is far from obvious that the Code would "entitle" Reilly to clear title in the equipment even if she claimed as exempt a "full" or "100%" interest in it (which she did not). Of course, it is likely that a trustee who fails to object to such a claim would have little incentive to do anything but pass title in the asset to the debtor. But that does not establish the statutory entitlement Reilly claims. 130 S.Ct. at 2668 n. 21.

### III. Schwab's Impact: Cases Post–Schwab

Since *Schwab*, courts have wrestled with its impact on consumer bankruptcy practice. As one court stated:

> [C]ourts and lawyers are still trying to fit *Schwab's* pronouncements into an operating framework. It has only been a year, after all. *E.g. [Gebhart v. Gaughan, (In re Gebhart)]*, 621 F.3d 1206, 1211–1213 (9th Cir.2010); *In re Messina*, 386 Fed.Appx. 152, 154 (3d Cir. 2010); *In re OBrien*, 443 B.R. 117, 135–136 (Bankr.W.D.Mich.2011); *In re Moore*, 442 B.R. 865, 866–868 (Bankr. N.D.Tex.2010). (Just based on these decisions, one might say that the full import of *Schwab*—procedural, evidentiary, and even substantive—is quite unsettled.)

*In re Wiczek*, 452 B.R. 762, 766 n. 10 (Bankr.D.Minn.2011).

Even if we accept the premise that the import of *Schwab* remains unclear, one thing is certain: most, if not all, courts which have specifically addressed exemptions of "100% of FMV" in the wake of *Schwab* have found such exemptions impermissible. No court has interpreted the Supreme Court's holding as either unfettered authorization for debtors to exempt assets in-kind, or as a mandate for courts to allow such exemptions. As aptly stated by one bankruptcy court:

> Although *Schwab* may encourage debtor's counsel to exempt the actual value of the asset if the debtor has a legal basis for an intent to claim the actual value of the asset as exempt, it clearly does not mandate it. Nor does it mandate that this court overrule any trustee objection when, on the face of Schedule C, it appears that the debtor's amount claimed exempt exceeds the amount that which is statutorily provided. It is clear that *Schwab* is limited in its application.

*In re Winchell*, No. 10–05827–PCW 13, 2010 WL 5338054, at *2 (Bankr.E.D.Wash. Dec. 20, 2010). Another court succinctly ruled: "[I]t is a misreading of *Schwab* to conclude that the Court has blessed the use of a designation such as '100% of FMV' as a valid and unobjectionable scheduling of a claimed exemption value where the relevant exempting statute ... expressly limits the exemption to a maximum cash value." *In re Stoney*, 445 B.R. 543, 552 (Bankr.E.D.Va.2011).

At least one court within this circuit agrees. A Massachusetts bankruptcy court recently ruled:

> The Court's discussion [in *Schwab*] has nothing to do with the "proper" way to claim a particular exemption under a particular exemption statute. The Court was merely demonstrating the type of language that may be used to show the world that the debtor is attempting to exempt an asset in its entirety, regardless of its actual value.... The *Schwab* Court was *not*, as the Debtors have argued, outlining a procedure by which an exemption claimed under a

limited-interest exemption statute could be legitimately converted into an exemption in-kind.

*In re Luckham*, No. 10–32633, 2012 WL 115386, at *6 (Bankr.D.Mass. Jan. 13, 2012).

The foregoing interpretations of *Schwab* are supported by the Supreme Court's own admonition that "the only burdens [its] conclusion imposes are burdens the Code itself prescribes, specifically, the burdens the Code places on debtors to state their claimed exemptions accurately and to conform such claims to statutory limits." 130 S.Ct. at 2667 n. 17. Even *Moore, supra,* which the Masseys describe in their Amended Brief as having reached a "sensible result," declined to interpret *Schwab* as broad license to exempt an asset in-kind where the authorizing statute caps the exemption. Instead, in ruling on an objection to a "100% of FMV" exemption, the court concluded that the trustee was entitled to an evidentiary hearing regarding the value of the debtor's exemptions. *In re Moore*, 442 B.R. at 868. At such a hearing, the debtor would have the burden of showing a "plausible basis for the claim that '100% of FMV' of an asset falls within the statutory limit on the amount that may be exempted." *Id.* The *Moore* court properly viewed *Schwab* simply as a suggestion for "debtors seeking to force the issue of whether exemption of an interest in an asset covered the entire asset." *Id.*

## IV. Schwab Applied

██ The facts before us diverge from both *Schwab* and *Taylor*. Unlike *Taylor,* the Trustee's objection was timely. Unlike *Schwab*, the claimed exemptions were facially problematic in their failure to specify an amount. As one bankruptcy court recently stated when confronted with the same situation, "[w]hat then?" *In re Salazar*, 449 B.R. 890, 897 (Bankr.N.D.Tex.

2011). In resolving this issue, the court in *Salazar* acknowledged *Moore's* approach—an evidentiary hearing wherein the debtor must demonstrate a plausible basis for the claim of 100% of FMV—and then offered another tack:

> Another approach is for the Court to simply declare that an objection to an exemption of "100% of FMV" is a facially valid objection because the debtor has failed to claim a set amount as contemplated by the exemption statute allowing the exemption. The Court then sustains the objection unless the debtor amends his exemptions to claim a dollar amount for his exempt interest in the property. The Court believes the latter approach best recognizes the reasoning in *Schwab* and therefore obviously departs somewhat from the *Moore* approach. The Court also takes a somewhat different view than the *Moore* conclusion that, if upon evidentiary hearing the objection is overruled, the asset claimed will no longer be part of the estate.

*Id.* at 897–88 (internal and external citations omitted).

One appellate court recently followed the *Salazar* analysis when considering an exemption of certain business interests stated simply as "FMV." *Hefel v. Schnittjer (In re Hefel)*, No. 11–CV–1010–LRR, 2011 WL 3292929 (N.D.Iowa July 29, 2011). That court adopted the "facially valid objection standard set forth in *Salazar,*" agreeing that such an approach "best recognize[d] the reasoning in *Schwab.*" *Id.* at *4. The court in *Hefel* explained as follows:

> [T]he reasoning of *Schwab* supports the facially valid objection standard set forth in *Salazar*. As explained in *Schwab,* an exemption claim of "FMV" will encourage the trustee to object. The trustee meets the burden of proof under Rule 4003(c) by filing the objection and point-

ing to the applicable statutory limit. *Schwab* did not indicate that any further showing is necessary. . . .

*Id.* (citation omitted). In arriving at this conclusion, the court relied not only on *Salazar*, but also on *In re Winchell*, 2010 WL 5338054, at *2, where the court ruled as follows:

> It is inevitable that should debtor's counsel list "FMV" in the "Value of Claimed Exemption" column, and Schedule C reflects that the current value exceeds the statutory exemption allowance, the trustee will object. *This court is duty bound to sustain such [an] objection.*

*See In re Hefel*, 2011 WL 3292929, at *4 (emphasis added).

Most recently, in *Luckham, supra*, the court sustained a trustee's objection to an analogous, proposed exemption of "100% of Equity" in the debtors' residence. There, the court held:

> [W]here the statutory basis for a debtor's claim of exemption provides only for an exemption of an interest in certain property up to a specific dollar amount, the "value of claimed exemption" must be identified as a monetary value. Nothing in *Schwab* . . . dictates otherwise; indeed, *Schwab* itself establishes the very principles which compel this conclusion.

*In re Luckham*, 464 B.R. at 77. Accordingly, the bankruptcy court in Luckham agreed with the majority of courts in concluding that under the circumstances, an evidentiary hearing on valuation was unnecessary, because the basis of the objection was the manner in which the debtor had claimed the exemption. *Id.* at 77 (citing *In re Salazar*, 449 B.R. at 899).

We agree with the consensus which has emerged from the foregoing cases that the Debtors' exemption claim of "100% of FMV" was facially invalid, and therefore, a hearing unnecessary. The Masseys' arguments are unpersuasive. We note with approval the *Luckham* court's rejection of the argument that proposed changes to Official Form C support in-kind exemptions which exceed the statutory limits. *See id.* at 74 n. 14. Like *Luckham*, we do not "see the proposed amended Schedule C as inconsistent" with this decision. *Id.* Furthermore, the Supreme Court already precluded such a form-based argument, when it declared:

> Basing the definition of the "property claimed as exempt," and thus an interested party's obligation to object under § 522(*l* ), on inferences that party must draw from evolving forms, rather than on the facial validity of the value the debtor assigns the "property claimed as exempt" as defined by the Code, would undermine the predictability the statute is designed to provide.

*Schwab*, 130 S.Ct. at 2666. Lastly, *Schwab* has also rejected the Masseys' policy-based argument which asserts, basically, that exemptions in-kind are necessary to give meaning and effect to a debtor's "fresh start." Addressing a similar argument in *Schwab*, the Supreme Court stated:

> Although none of Reilly's policy arguments can overcome the Code provisions or aspects of *Taylor* that govern this case, our decision fully accords with all of the policies she identifies. We agree that "exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start' . . . . We disagree that this policy required Schwab to object to a facially valid claim of exemption on pain of forfeiting his ability to preserve for the estate any value in Reilly's business equipment beyond the value of the interest she declared exempt." This approach threatens to convert a fresh start

into a free pass.... Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors, and it is not for us to alter this balance by requiring trustees to object to claimed exemptions based on form entries beyond those that govern an exemption's validity under the Code.

*Id.* at 2667 (citations omitted).

Based on all of the foregoing, we do not reach the parties' concerns regarding post-petition equity, as this issue does not impact our decision. We conclude that there is no legitimate reason for the Debtors to ignore the burdens imposed by the Code, and reiterated by *Schwab*, to state their exemptions accurately and in conformance with statutory limits, by identifying the value of the claimed exemption up to or in a specific dollar amount. Thus, the bankruptcy court did not err when it sustained the Trustee's objection to the Masseys' facially invalid exemptions of "100% of FMV" in the residence and the car.

## CONCLUSION

Accordingly, the Order is **AFFIRMED**.